DAY MASONRY, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT 347, Respondent,

Commercial Roofing, Inc., Appellant,

GenFlex Roofing Systems, LLP, Appellant,

Lovering–Johnson Construction, Appellant.

No. A08–929.

Supreme Court of Minnesota.

April 15, 2010.

William A. Moeller, Blethen, Gage & Krause, PLLP, Mankato, MN, for appellant Day Masonry.

Amy E. Mace, Christian R. Shafer, Ratwik, Roszak & Maloney, PA, Minneapolis, MN, for respondent Independent School District 347.

William M. Drinane, Timothy S. Poeschl, Hanson, Lulic, & Krall, LLC, Minneapolis, MN; and Chad McKenney, Donohue, McKenney, & Bergquist, Ltd., Maple Grove, MN, for appellant Commercial Roofing, Inc.

Michael S. Kreidler, Louise A. Behrendt, Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, for appellant GenFlex Roofing Systems, LLP.

Mark S. Brown, Timothy J. Carrigan, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for appellant Lovering–Johnson Construction.

## OPINION

GILDEA, Justice.

This action arises from alleged defects in the construction of Willmar High School, which opened in 1994. In 2006, respondent Independent School District 347 (School District) commenced an arbitration proceeding against appellants, Lovering–Johnson Construction (Lovering–Johnson), Commercial Roofing, Inc. (Commercial Roofing), and GenFlex Roofing Systems, LLP (GenFlex), which were contractors or suppliers on the project. The School District asserted claims based on express written warranties and other non-warranty claims. Lovering–Johnson joined appellant Day Masonry to the arbitration proceeding because Day Masonry was the subcontractor that performed masonry work on behalf of Lovering–Johnson.[1]

The Contractors sought to have the arbitration proceeding dismissed, arguing that it was untimely. The district court agreed with the Contractors and dismissed the claims based on the statute of limitations. On appeal, the court of appeals affirmed as to the non-warranty claims, but reversed as to the warranty claims. Because we conclude that the statute of limitations bars the non-warranty claims but not the warranty claims, we affirm in part. But because we conclude that the Contractors were not required to file a notice of review in order to preserve their statute-of-repose defense for appeal, we remand the warranty claims to the court of appeals for consideration of the statute-of-repose defense.

In January 1993, the School District entered into construction contracts with Lovering–Johnson and Commercial Roofing for the construction of a new high school.

Lovering–Johnson was the general contractor for masonry work, and Lovering–Johnson subcontracted the masonry work to Day Masonry. Commercial Roofing installed the roofing systems, including the waterproof membrane, and GenFlex manufactured the membrane for the roof. GenFlex provided two warranties to the School District, a Full Roofing System Warranty and a Limited Membrane Only Warranty. The Full Roofing System Warranty provides that during the period May 1, 1994, through May 1, 2004, GenFlex "will repair any leak" in the roofing system. The Limited Membrane Only Warranty provides that during the period May 1, 2004 through May 1, 2014, the roofing membrane "will not deteriorate to the point of causing leaks through the membrane." The School District's contracts with both Lovering–Johnson and Commercial Roofing also contained express warranties that provide "that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents."

The new Willmar High School was substantially complete by September 1, 1994. But almost as soon as the high school opened, the building began experiencing numerous leaks. Several custodians testified in their depositions as to the extent and ongoing nature of the leakage problems. According to deposition testimony, there were at least six specific areas in the building that experienced frequent leaks.

The record also shows the School District's efforts to address the water problem at the high school. For example, in November 1996, the then head custodian at the high school wrote a letter to GenFlex informing the company of leaks in the roof. And, as detailed in two invoices from May

---

1. For ease of reference, we refer to Lovering–Johnson, Commercial Roofing, GenFlex and Day Masonry collectively as the "Contractors."

23, 2002, and October 30, 2002, the School District hired West Central Roofing to repair leaks in the roof on at least two occasions.

In 2004, the School District hired Waters Edge Architectural Group, Inc., to perform an assessment of the condition of the buildings in the district. In September 2004, on Waters Edge Architectural's recommendation, the School District hired Inspec, an independent forensic engineering and testing firm, to do a thorough investigation of the causes of the roof leaks at the high school. Inspec issued two reports detailing the nature and cause of the roof leaks and recommending extensive repairs to the exterior walls and the perimeter of the roof. The recommended repairs totaled about two million dollars.

Following receipt of the first Inspec report, the School District sent letters, dated December 13, 2004, to both Lovering–Johnson and Commercial, enclosing a copy of the Inspec report and informing them of the potential warranty claims. On August 12, 2005, the School District sent notice to GenFlex of issues with the roof membrane and its intention to make a claim under the GenFlex warranties.

On March 13, 2006, the School District submitted a demand for arbitration pursuant to its contracts with Lovering–Johnson and Commercial Roofing and the warranties therein, and the GenFlex warranties. The contracts with Lovering–Johnson and Commercial Roofing incorporate the American Institute of Architects' General Conditions of the Contract for Construction and contain an arbitration provision that provides that "[a]ll claims, disputes and other matters in question between the Contractor and the Owner arising out of or relating to the Contract Documents or the breach thereof ... shall be decided by arbitration." The arbitration clause goes on to stipulate that "[t]he demand for arbitration ... in no event shall ... be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

After Lovering–Johnson joined Day Masonry in the arbitration proceeding, Day Masonry filed an action in district court seeking to stay the arbitration. Day Masonry, joined by the other contractors, argued that Minn.Stat. § 541.051 (2006) barred all the School District's claims—both the express warranty claims and the non-warranty claims—and moved for summary judgment on the grounds that these claims were time-barred.[2] The district court made extensive findings of fact and found the School District's claims untimely under section 541.051, concluding that the statute of limitations had run on the School District's claims.[3]

The School District appealed, and the court of appeals affirmed in part and reversed in part. *Day Masonry v. Indep. Sch. Dist. 347*, 2009 WL 1182053 (Minn. App. May 5, 2009). The court of appeals concluded that the district court did not

---

**2.** Minnesota Statutes § 541.051, subd. 1, provides that an action to recover damages for injury to property, other than an action for breach of warranty, must be commenced within two years of its accrual and that such a cause of action cannot "accrue more than ten years after substantial completion of the construction." Minnesota Statutes § 541.051, subd. 4, provides the limitations period for breach-of-warranty claims.

**3.** While the district court found that the School District's claims under the Full Roofing System Warranty were time-barred, it found the School District could proceed to arbitration on the Limited Membrane Only Warranty. The district court's conclusion with respect to the Limited Membrane Only Warranty was not challenged on appeal.

err in holding that the School District's non-warranty claims were barred by the statute of limitations because the record supports the district court's determination that the School District, through its agents, knew of an actionable injury more than two years before the School District's demand for arbitration. *Id.* at *4. But the court of appeals reversed the district court's determination that the School District's breach-of-warranty claims are also barred by the statute of limitations. Specifically, the court of appeals concluded that the district court applied the wrong legal standard as to when the breach-of-warranty claims accrued. *Id.* at *5. The court of appeals concluded that the record does not support the district court's finding that the School District should have known before March 13, 2004, that the Contractors would not honor their warranties and thus, the breach-of-warranty claims are not barred by the two-year statute of limitations. *See id.* at *5; Minn. Stat. § 541.051, subd. 4. The court of appeals concluded that the earliest the School District knew or should have known of the Contractors' unwillingness or inability to fulfill their warranties was after December 13, 2004, when the School District sent the first Inspec report to Lovering–Johnson and Commercial Roofing. *Day Masonry*, 2009 WL 1182053, at *5.

The court of appeals did not consider the Contractors' alternative argument that, if the warranty claims accrued in December 2004, the claims would still be time-barred under the statute of repose in

section 541.051. Because the Contractors did not file a notice of review relating to the statute-of-repose defense, the court held that the Contractors waived their argument that the warranty claims were barred by the statute-of-repose. *Day Masonry*, 2009 WL 1182053, at *5; *see* Minn. R. Civ.App. P. 106 (2009).[4] The court therefore held that the School District could proceed with arbitration of its warranty claims against Lovering–Johnson, Commercial Roofing, and GenFlex. *See Day Masonry*, 2009 WL 1182053, at *5.

The Contractors filed a petition for review on the accrual of warranty claims, and the School District filed a request for conditional cross-review on the accrual of non-warranty claims. We granted review on both issues.

## I.

■ This case comes to us after the district court granted the Contractors' motion for summary judgment. We apply a de novo standard of review to a grant of summary judgment. *Zip Sort, Inc. v. Comm'r of Revenue*, 567 N.W.2d 34, 37 (Minn.1997). Because the district court granted the Contractors' summary judgment motion against the School District, we view the evidence in the light most favorable to the School District. *Kratzer v. Welsh Co., LLC*, 771 N.W.2d 14, 18 (Minn.2009). The judgment will be affirmed, however, if no genuine issues of material fact exist and if the court below

---

4. We promulgated amendments to Rule 106 that became effective on January 1, 2010. Because these amendments do not apply to this case, we do not discuss them further and refer to the 2009 version of the rule throughout. The version of Minnesota Rule of Civil Appellate Procedure 106 applicable to this case provides:

A respondent may obtain review of a judgment or order entered in the same action

which may adversely affect respondent by filing a *notice of review* with the clerk of the appellate courts. The notice of review shall specify the judgment or order to be reviewed, shall be served and filed within 15 days after service of the notice of appeal, and shall contain proof of service. A filing fee of $100 shall accompany the notice of review.

properly applied the law. *Zip Sort, Inc.*, 567 N.W.2d at 37; *see also* Minn. R. Civ. P. 56.03.

■ This case raises questions as to whether the statute of limitations or the statute of repose in Minn.Stat. § 541.051 bars the School District's claims. The construction and application of a statute of limitations or repose, including the law governing the accrual of a cause of action, are questions of law that we also review de novo. *See State Farm Fire Cas. v. Aquila Inc.*, 718 N.W.2d 879, 883 (Minn.2006). The parties agree that the School District's claims are governed by the limitations periods set forth in Minn.Stat. § 541.051. We therefore begin with a discussion of the general provisions in this statute.

For non-warranty claims, section 541.051, subdivision 1(a), provides both a statute of limitations and a statute of repose. Actions must be commenced no later "than two years after discovery of the injury," but such causes of action shall not "accrue more than ten years after substantial completion of the construction." Section 541.051, subdivision 1(b), goes on to provide that "a cause of action accrues upon discovery of the injury."[5] The parties agree that the two-year statute of limitations and the ten-year statute of repose in section 541.051 apply to the School District's non-warranty claims.

For warranty claims, the applicable limitations period is contained in subdivision 4 of section 541.051, which provides that claims must be commenced "within two years of the discovery of the breach." In 2004, the Minnesota Legislature amended subdivision 4 so that the ten-year statute of repose found in subdivision 1 of Minn. Stat. § 541.051 would also apply to breach-of-warranty claims. Act of May 15, 2004, ch. 196, § 1, 2004 Minn. Laws 356, 356–57. Until the 2004 amendments became effective on August 1, 2004, there was no statute of repose for breach-of-warranty claims. Minn.Stat. 541.051, subd. 4 (2002).[6]

With this statutory framework in mind, we proceed to address the timeliness of the School District's claims beginning with the warranty claims.

### II.

The Contractors argue that the School District's breach-of-warranty claims are untimely under both the two-year statute of limitations and the ten-year statute of repose in Minn.Stat. § 541.051 (2006). In order to decide whether the School District's warranty claims are timely, we must first consider when those claims accrued. The parties agree, and we will assume for

---

5. In the 2004 and 2006 versions of the statute, this provision was in subdivision 1(b) of Minn.Stat. § 541.051. But in the most recent version of Minn.Stat. § 541.051, this provision is found in subdivision 1(c). *Id.*, subd. 1(c) (2008).

6. The version of section 541.051, subdivision 4, in effect prior to the 2004 amendments provided that section 541.051 "shall not apply to actions based on breach of ... an express written warranty, provided such actions shall be brought within two years of the discovery of the breach." Minn.Stat. § 541.051, subd. 4 (2002). In 2004, the Minnesota Legislature

amended section 541.051, subdivision 4, to read in part: "For the purposes of actions based on breach of ... an express written warranty, such actions shall be brought within two years of the discovery of the breach." Act of May 15, 2004, ch. 196, § 1, 2004 Minn. Laws 356, 356–57. By removing the "shall not apply" language of the earlier version of section 541.051, subdivision 4, that exempted warranty claims from application of the other provisions in the section, including the statute of repose in subdivision 1, the legislature effectively added the ten-year statute of repose to breach-of-warranty claims.

purposes of this appeal, that this case involves warranties of future performance.[7]

## A.

■ We held in *Vlahos v. R & I Construction of Bloomington, Inc.*, that the statute of limitations for a breach-of-warranty claim "begins to run when the homeowner discovers, or should have discovered, the builder's refusal or inability to ensure the home is free from major constructions defects." 676 N.W.2d 672, 678 (Minn.2004). *Vlahos* involved a breach of the statutory warranty for new home construction. *Id.; see* Minn.Stat. § 327A.02, subd. 1 (2008). But we recognized that the same standard applies to a claim for breach of an express warranty for future performance. *See Vlahos,* 676 N.W.2d at 678 (explaining that the statutory warranty at issue in *Vlahos* operates in much the same way as an express warranty of future performance); *Church of the Nativity of Our Lord v. WatPro, Inc.,* 491 N.W.2d 1, 6 (Minn.1992) (explaining that a breach of an express warranty for future performance accrues "when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract") (citation omitted) (internal quotation marks omitted), *overruled on other grounds by Ly v. Nystrom,* 615 N.W.2d 302, 314 n. 25 (Minn. 2000).

The district court cited the standard from *Vlahos* and concluded that under that standard, the School District's warranty claims accrued more than two years before the March 2006 arbitration demand. The court explained that, based on its finding that the School District had notice of defects in the building prior to September 1, 2002, "the School District had every opportunity to contact Gen–Flex, Commercial Roofing and Lovering–Johnson about the problem prior to September 1, 2004 (the ten year anniversary date of substantial completion of the school) and thus would have known whether they were intending on performing or breaching their respective warranties." Because the School District did not take action to inform the Contractors of the leaks or make a demand that the Contractors fix the problems until after September 1, 2004, the district court found that the statute of limitations had already run on the School District's warranty claims by the time it brought the arbitration action under the "should have known" prong of the *Vlahos* test.

The court of appeals concluded that the district court misapplied the *Vlahos* standard. *Day Masonry,* 2009 WL 1182053, at *5. Specifically, the court of appeals faulted the district court for "impos[ing] a burden the law does not require" and said that the district court's application of the

---

7. In examining when a cause of action for breach of an express warranty accrues, courts have often looked to whether the claim is one for breach of warranty of future performance or one for breach of warranty to repair and replace. *See Donatelle Plastics Inc. v. Stonhard, Inc.,* No. 01–1429, 2002 WL 31002847, at *9 (D.Minn. Sept.5, 2002) (explaining that a breach of a "repair and replace" warranty is discovered as soon as the owner discovers the product is defective, but that a breach of a future performance warranty is only discovered when the seller stops trying to maintain the product as warranted); *Anderson v. Crest-*

*liner, Inc.,* 564 N.W.2d 218, 222 (Minn.App. 1997) (" 'Thus, the key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a *remedy* if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product itself for a stated period of time.' " (quoting *Ontario Hydro v. Zallea Sys., Inc.,* 569 F.Supp. 1261, 1266 (D.Del.1983))). We need not resolve that question in this case because the parties agree that we should treat the School District's breach-of-warranty claims as involving warranties of future performance.

*Vlahos* standard "runs afoul of the rule that failure to take legal action with respect to a known injury, standing alone, does not trigger the statute of limitations on a warranty claim." *Id.*

The difference between the district court and court of appeals' application of the *Vlahos* standard relates to whether a claim for breach of warranty of future performance can accrue in the absence of notice to the warrantor that the warranty was at issue. In addressing the question of when a warrantee discovers or should have discovered the warrantor's breach of express warranty, we have focused on the date the warrantor gives some affirmative indication that it will not or cannot fulfill its obligations under the warranty. *See, e.g., WatPro*, 491 N.W.2d at 7 (concluding that

the breach occurred "when WatPro advised Nativity that Flag was unable or unwilling to honor its guarantee").[8] Such unwillingness or a refusal would most likely come in response to an affirmative request for performance.

We need not decide in this case whether someone in the position of the School District must always give written notice to the warrantor that a warranty is at issue before a claim for breach of warranty of future performance could accrue. This is so because the Contractors point to no evidence showing that the School District had reason to know, before notifying the Contractors that the warranties were at issue in December 2004, that the Contractors were not going to perform under their warranties of future performance.[9]

8. Courts in other jurisdictions that apply a *Vlahos*-like test also tend to date the accrual of a breach-of-warranty claim to an affirmative communication in which the warrantor gives some indication of its inability or unwillingness to perform. *See, e.g., Hersh Cos. v. Highline Vill. Assocs.*, 30 P.3d 221, 226 (Colo.2001) ("[T]he breach of warranty claims based on Hersh's failure to repair or replace the allegedly defective work accrued when the breach occurred and was discovered in September 1995—the date upon which Hersh first refused to conduct further repair efforts."); *Paskell v. Nobility Homes, Inc.*, 871 S.W.2d 481, 484 (Tenn.1994) ("[N]o breach of the warranty could occur until Nobility refused to honor its obligations and the plaintiff's discovery of the breach. Not until late in the summer of 1984, in the 27 August letter, did the defendant make known its refusal to honor its obligations under the extended warranty.").

9. The one exception is GenFlex's reliance on a letter sent by the high school's head custodian, on November 18, 1996, to GenFlex. GenFlex contends that this letter provides a basis to conclude that the School District had reason to know that GenFlex was going to breach its warranties many years before December 2004. Specifically, GenFlex argues that because the record does not reflect how it responded to the November 18 letter, it must have ignored the letter and from its

failure to respond, the School District should have known, presumably in very late 1996, that GenFlex was going to breach its warranties. The School District argues that we should not consider GenFlex's argument because the district court did not decide it. Because the district court did not make findings of fact sufficient for us to determine whether the 1996 letter gave the School District reason to know that GenFlex would breach its warranty of future performance, we decline to consider this argument. *See Rehberger v. Project Plumbing Co.*, 295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973) ("This court will not consider the applicability of the statute of limitations on appeal, even though the question was raised below, if it was not passed on by the trial court. This is especially true in a case such as the one at bar where the facts upon which its application depends are in dispute.").

For the same reason, we decline to consider GenFlex's alternative argument that the warranty claims fail because the warranty expired before the School District demanded arbitration. GenFlex argues that it is entitled to dismissal of the School District's breach-of-warranty claims because the warranty was effective from May 1, 1994, through May 1, 2004, and thus expired before the School District brought its breach-of-warranty claims in March 2006. The School District counters

■ The Contractors argue that accrual should not await notice from the School District, and they cite to evidence in the record establishing that the School District was aware of the water problem in the building several years before it demanded arbitration. But a breach-of-warranty claim does not accrue upon knowledge of the injury. The statute requires that the School District had reason to know that the Contractors were unable or unwilling to honor their warranties. *Compare* Minn. Stat. § 541.051, subd. 1(b) (providing that non-warranty claims accrue upon "discovery of the injury"), *with* Minn.Stat. § 541.051, subd. 4 (providing that warranty claims accrue upon "discovery of the breach"); *see also Vlahos*, 676 N.W.2d at 677 (discussing distinction between discovery of injury and discovery of the breach).

Based on the record before us in this case, the earliest the breach-of-warranty claims could have accrued under the *Vlahos* standard would have been after the School District sent letters to Lovering–Johnson and Commercial Roofing on December 13, 2004, informing them of the School District's potential warranty claims and forwarding the Inspec report.[10] We therefore hold that the earliest the warranty claims could have accrued was December 2004.

## B.

We turn next to consider whether, as the district court held, the statute of limitations bars the School District's warranty claims. Minnesota Statutes § 541.051, subd. 4, provides that claims must be brought within two years of discovery of the breach of warranty. But the School District's breach-of-warranty claims accrued no earlier than December 2004, which is less than two years before the School District submitted its demand for arbitration in March 2006. We therefore hold that the statute of limitations does not bar the School District's warranty claims.

## C.

■ We turn next to the question of the statute of repose. The Contractors rely

---

that the warranty dates of the GenFlex Full Roofing System Warranty are inconsistent with the contract requirements. The Full Roofing System Warranty states that it is effective from May 1, 1994 through May 1, 2004. But the School District argues that the contract requires the ten-year warranty to be issued once GenFlex has inspected and accepted the roof and that GenFlex did not do this until 1996. Therefore, the School District contends, the warranty could not expire until 2006, after it demanded arbitration. The district court did not make findings sufficient for us to decide this question, and so we decline to reach it. *See id.* at 578, 205 N.W.2d at 127.

10. We refrained from deciding the accrual question as a matter of law in *Vlahos*, concluding that factual disputes made summary judgment inappropriate. 676 N.W.2d at 679. But the record in this case is different from that in *Vlahos*. The Vlahoses filed their lawsuit in April 2001, and they argued that it was timely as a matter of law because it was filed within a year of their May 2000 notice to the contractor describing problems with the home. *Id.* at 675–76. As the court of appeals noted, the record in *Vlahos* contained evidence that the prior owners "had numerous discussions" with the contractors about the water problem in the home in the 1990s. *See Vlahos v. R & I Constr. of Bloomington Inc.*, 658 N.W.2d 917, 921 (Minn.App.2003), *rev'd*, 676 N.W.2d 672 (Minn.2004). The Vlahoses suggested that the knowledge of the prior owners could not be imputed to them for purposes of the accrual of their cause of action. We disagreed. *Vlahos*, 676 N.W.2d at 678. We held that "[b]ased on the information presented to the district court, the question of when either the [prior owners] or the Vlahoses discovered or should have discovered [the contractor's] refusal or inability to ensure the home was free from major construction defects was a factual question, inappropriate for resolution on summary judgment." *Id.* at 679.

on the statute of repose as an alternative theory to their statute-of-limitations argument. The School District contends that the statute of repose does not apply.[11]

The district court did not explicitly decide whether, as the Contractors argue, the statute of repose bars the School District's express warranty claims because the court concluded that the claims accrued before the statute of repose in Minn.Stat. § 541.051 became effective. In other words, the district court concluded that the 2002 version of section 541.051 applied. Because there was no statute of repose in the 2002 version of the statute, the district court did not decide whether the statute of repose bars the warranty claims, but instead concluded that the claims were barred by the statute of limitations.

■ The court of appeals disagreed with the district court's accrual analysis and held that the claims accrued in December 2004. *Day Masonry,* 2009 WL 1182053, at *5. But the court of appeals declined to decide the Contractors' argument that, even if the breach-of-warranty claims did not accrue until December 2004, the ten-year statute of repose bars the warranty claims. *Id.* at *5. The court of appeals explained that " '[e]ven if the judgment below is ultimately in its favor, a party must file a notice of review to challenge the district court's ruling on a particular issue.' " *Id.* (quoting *City of Ramsey v. Holmberg,* 548 N.W.2d 302, 305 (Minn. App.1996), *rev. denied* (Minn. Aug. 6, 1996)). Because the Contractors did not file a notice of review challenging the district court's application of the 2002 version

of section 541.051 to the School District's claims, the court of appeals did not decide the Contractors' statute-of-repose defense. The Contractors argue that the court of appeals erred in applying Minn. R. Civ. App. P. 106 (2009) to bar their arguments in this case. We review de novo the court of appeals' interpretation of the Rules of Civil Appellate Procedure. *See In re GlaxoSmithKline PLC,* 699 N.W.2d 749, 753 (Minn.2005).

At the time of the appeal, Rule 106 stated that "[a] respondent may obtain review of a judgment or order entered in the same action which may adversely affect respondent by filing a notice of review with the clerk of the appellate courts." By its terms, Rule 106 would apply if there were an adverse judgment or order on the statute-of-repose question. In this case, there is no such adverse order. In fact, the district court never reached the issue of the statute of repose, deciding the case instead on the alternative grounds of the statute of limitations.

At the district court, the Contractors presented the statute of repose and the statute of limitations as two independent, alternative bases for the district court to hold the School District's breach-of-warranty claims time-barred. A review of the district court judgment and memorandum confirms that the district court never made any ruling on the statute-of-repose argument one way or another. The district court carefully analyzed the facts of the case and applied the analysis from the court of appeals' decision in *Sletto v. Wes-*

---

**11.** The School District argues that even if the Contractors preserved the statute-of-repose defense, the statute of repose does not apply because the statute of repose effectively rewrites the parties' contracts. Specifically, the School District argues that the only time limitation relevant to its arbitration demand is the statute of limitations and that a statute of

repose is not a statute of limitations. The School District also argues that the time limitation applicable to its arbitration demand must be the limitations period in effect when the contract was signed in 1993, not the limitations period in effect in 2006 when it filed its arbitration demand.

*ley Construction, Inc.,* 733 N.W.2d 838 (Minn.App.2007),[12] to conclude that, in order for the 2004 version of the statute to apply, both the accrual and the commencement of the action would need to have occurred after the effective date of the amendment in August 2004. Because the district court found that the School District's claims accrued prior to March 2004, the district court concluded that the 2002 version of the statute applied. While the district court concluded that the pre–2004 version of section 541.051 applied, that conclusion was not a rejection of the statute-of-repose defense.

Moreover, the district court's determination that all the School District's claims accrued prior to March 2004, rendering them completely barred by the statute of limitations, was not adverse to the Contractors in any meaningful way. Because the district court concluded that the claims accrued prior to March 2004, the claims were barred by the statute of limitations and thus the court had no need to reach the statute-of-repose issue.

■ We have not "imposed the requirement of a notice of review where the trial court has failed to rule on a ·question litigated and practical reasons continue to render such a notice unnecessary." *Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.,* 418 N.W.2d 173, 175 (Minn.1988). To the contrary, it is well established in Minnesota law that where a party litigated two separate grounds for recovery and the district court made its decision based on one and not the other, that party can "stress any sound reason for affirmance" even if "it is not the one

assigned by the trial judge, in support of the decision." *Penn Anthracite Mining Co. v. Clarkson Sec. Co.,* 205 Minn. 517, 520, 287 N.W. 15, 17 (1939).

We note that *Penn Anthracite* was decided before we promulgated the Rules of Civil Appellate Procedure. But we have continued to rely on the principle articulated in *Penn Anthracite* even after Rule 106 became effective in 1968. *See Hunt by Hunt v. Sherman,* 345 N.W.2d 750, 753 n. 3 (Minn.1984) ("It is well settled, however, that a respondent may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, even though the argument may involve an attack upon the reasoning of the lower court or an insistence upon matters overlooked or ignored by it." (citing *Penn Anthracite,* 205 Minn. at 520, 287 N.W. at 17)).

The School District seemingly contends that the result reached in *Penn Anthracite* is inconsistent with *Arndt v. American Family Insurance Co.,* 394 N.W.2d 791 (Minn.1986). Rather than *Penn Anthracite,* the School District argues that *Arndt* should control here and that under *Arndt,* the Contractors had to file a notice of review. We disagree.

In *Arndt,* the plaintiff, Jeffrey Arndt, was injured while helping a friend, Ronald Kieffer, with farm work. 394 N.W.2d at 792. Arndt brought a declaratory judgment action against Kieffer's insurance company seeking a determination that the insurer provided coverage for Arndt's injuries. *See id.* The district court dismissed the declaratory judgment action but allowed Arndt to orally amend his complaint

---

**12.** In *Sletto,* the court of appeals held that the statute of repose of section 541.051 did not apply to bar the homeowners' statutory warranty claim, which they brought more than ten years after the completion of construction, because their warranty claim accrued before August 1, 2004. 733 N.W.2d at 840–41. The court explained that the limitation on warranty claims under Minn.Stat. § 541.051 that became effective on August 1, 2004, as part of the 2004 amendments, should only apply "if both the commencement and the accrual occur after the effective date of the statute." *Sletto,* 733 N.W.2d at 844.

to "transform it into a garnishment action." *Arndt v. Am. Family Mut. Ins. Co.*, 380 N.W.2d 885, 887 (Minn.App.1986), *rev'd*, 394 N.W.2d 791 (Minn.1986). The district court proceeded to resolve the merits of the coverage question against Arndt within the context of the amended complaint. *See Arndt*, 394 N.W.2d at 793. Arndt appealed and the insurer, without having filed a notice of review of the district court's decision to allow the amendment, argued that the amendment was improper. *See id.* We concluded that the insurer could not challenge the district court's order allowing Arndt to amend his complaint because the insurer did not file a notice of review. *See id.*

*Arndt* is not inconsistent with *Penn Anthracite,* and *Arndt* does not apply to the Contractors' alternate statute-of-repose argument in this case. Under *Arndt*, even where the final judgment is entirely in respondents' favor, respondents must still file a notice of review to challenge an order that the district court entered that was adverse to the respondents. 394 N.W.2d at 793 (rejecting the insurer's argument that it did not need to file a notice of review because the judgment was entirely in its favor and its argument that it was excused from filing a notice of review because the order was not appealable). This requirement for a notice of review also applies to a district court's denial of a motion that a respondent seeks to challenge on appeal. *See Pine River State Bank v. Mettille,* 333 N.W.2d 622, 632 (Minn.1983) (concluding that the respondent needed to file a notice of review if he wanted to appeal the trial judge's denial of his motion for a new trial to show additional damages for mental anguish); *Ford v. Chi., Milwaukee, St. Paul & Pac. R.R. Co.,*

294 N.W.2d 844, 845 (Minn.1980) (explaining that the plaintiffs could not raise on appeal the denial of their motion to join the grain terminal as a party defendant without filing a notice of review). But the Contractors' situation is different from that presented in *Arndt* and the other cases in which we have required a respondent to file a notice of review. In this case, the district court did not issue an order rejecting the Contractors' statute-of-repose defense, and the judgment in which the district court determined that the 2002 version of the statute applied was not adverse to the Contractors because the district court held that the 2002 version of the statute barred the School District's warranty claims.[13]

In sum, Rule 106 does not require a notice of review where a respondent advances on appeal an argument that was presented to, but was not ruled on by, the district court and is an alternative ground that supports affirmance of a judgment or order that was entered in respondents' favor. *See Penn Anthracite,* 205 Minn. at 520, 287 N.W. at 17. We therefore hold that the Contractors were not required to file a notice of review in this case to preserve their statute-of-repose argument on appeal, and we remand the question of whether the statute of repose operates to bar the School District's warranty claims to the court of appeals for further consideration.

## III.

◼ In its request for conditional cross-review, the School District argues that the court of appeals erred in affirming summary judgment in favor of the Contractors on the grounds that the School District's non-warranty claims are barred by the

---

**13.** The School District also relies on the court of appeals' decision in *City of Duluth v. Duluth Police Local,* 690 N.W.2d 357 (Minn.App. 2004). To the extent that case is inconsistent with this opinion, it is overruled.

two-year statute of limitations. The School District's non-warranty claims accrued upon "discovery of the injury," and the School District had to bring its action within two years of the date of accrual. Minn.Stat. § 541.051, subd. 1(b) (2006). In its brief, the School District renews the challenge it raised at the court of appeals to the district court's findings of fact as "clearly erroneous,"[14] and argues that without these clearly erroneous factual findings, the court of appeals could not properly conclude that the School District had knowledge of an actionable injury before March 2004, two years before the School District demanded arbitration.

But the question on appeal from entry of summary judgment is not whether the district court's findings are clearly erroneous. The question is whether, when the evidence is construed in the light most favorable to the School District, there is a genuine dispute that the School District had knowledge of its injury prior to March 2004. *See Kratzer v. Welsh Co., LLC,* 771 N.W.2d 14, 18 (Minn.2009). Our review of the record demonstrates that there is not.

The School District argues that it did not know of an actionable injury prior to March 2004 because it was not aware of the extent of the leakage problem at the high school until after that time. The School District's argument is akin to the accrual argument we rejected in *Hyland Hill North Condominium Ass'n v. Hyland*

*Hill Co.,* 549 N.W.2d 617 (Minn.1996), *overruled on other grounds by Vlahos v. R & I Constr. of Bloomington, Inc.,* 676 N.W.2d 672 (Minn.2004).

In *Hyland Hill,* the district court concluded that a condominium association was aware of its injury by October 6, 1987, based on the minutes of an association meeting in which the members discussed leaks in the party room and the garage. 549 N.W.2d at 619. The court of appeals reversed, holding that while the association may have been aware of the need for roof repairs on October 6, 1987, it was not aware of the need to replace the roof until it received a report in August 1990 from Inspec informing the association that the roof would need to be replaced. *Id.* at 620. We reversed the court of appeals and held that the district court was correct in finding that the association was aware of its injury by October 6, 1987, and therefore that the statute of limitations had run on the association's breach of contract claims. *Id.* at 621. Under the standard applied in *Hyland Hill,* the School District need not have been aware of the extent of the leakage problem, but it needs to have been aware that there was a leakage problem. *See id.* at 621; *see also Appletree Square 1 Ltd. P'ship., CHRC v. W.R. Grace & Co.,* 815 F.Supp. 1266, 1279 (D.Minn.1993) (interpreting section 541.051 and explaining that the statute-of-limitations period commences "when a plaintiff has enough facts

14. The findings that the School District challenged at the court of appeals were numbered 18, 22(a), 22(e), 32, 35, 37, 50, and 53. The School District generally argues that in these findings the district court mischaracterized documents or testimony in the record. Even assuming that the School District is correct as to all of these findings, there is still no genuine issue of fact as to the School District's knowledge of its injury. Findings 18 and 22(a) relate to GenFlex's separate accrual arguments, and because we are not reaching these arguments, the dispute as to the facts set forth in these findings is not material to the question of the School District's knowledge of its injury. The other findings relate to evidence of the water problem in the building. We do not rely on the district court's characterization of the evidence referenced in these findings on review of summary judgment. We examine the evidence in the record in the light most favorable to the School District to determine whether summary judgment was properly entered. As set forth below, we conclude that it was.

to be on notice that a potential injury may exist" and this time period "does not await a 'leisurely discovery of the full details' of the injury" (quoting *Davidson v. Wilson,* 763 F.Supp. 1465, 1469 (D.Minn.1990))).

The evidence, even when construed in the light most favorable to the School District, establishes that this standard is met here. The two invoices from 2002, both of which refer to "leak(s)," demonstrate that the School District was not only aware of a leakage problem in 2002, but was also aware of the need to take action to repair the problem. The deposition testimony from the custodians, describing their experience with the water problem at the high school, further confirms that the School District had knowledge of the leakage problem more than two years before the March 2006 arbitration demand. *See* Minn.Stat. § 541.051, subd. 1.

The School District offers two arguments why this evidence is not sufficient to demonstrate its knowledge. The School District first argues that the 2002 invoices cannot be used to establish knowledge of its injury because the cost of the repairs reflected in these invoices was only $120. But under the standard we applied in *Hyland Hill,* a party need not be aware of the extent of its injury for the statute of limitations to begin to run so long as the party is aware of the injury and the need for repairs. 549 N.W.2d at 621; *cf. Antone v. Mirviss,* 720 N.W.2d 331, 336 (Minn. 2006) (noting that Minnesota follows the "some damage" rule under which a cause of action accrues when the plaintiff has suffered some damage).

The School District next argues that these invoices and the custodians' testimony do not establish that the School District had knowledge of the water problem. Specifically, the School District contends that it was not on notice of its injury because the superintendent of the School District was not fully apprised of the leakage problem until she received Inspec's report in 2004. But the custodians were the agents of the School District to the extent they were entrusted with the upkeep of the school. Their knowledge of the leaks and the efforts they took to have the leaks repaired therefore is imputed to the School District. *See Sussel Co. v. First Fed. Sav. & Loan Ass'n of St. Paul,* 307 Minn. 199, 201–02, 238 N.W.2d 625, 627 (1976) (describing the "general rule" that the knowledge of an agent is imputed to the principal and its exceptions); *Jackson v. Mut. Benefit Life Ins. Co.,* 79 Minn. 43, 47, 81 N.W. 545, 546 (1900) ("The general rule is that notice to an agent, to be binding on, and constitute constructive or implied notice to, the principal, must be of facts within the scope of the agency, or of or concerning business engaged in by the agent by the authority of the principal."); *cf. Travelers Indem. Co. v. Bloomington Steel & Supply Co.,* 718 N.W.2d 888, 895–96 (Minn.2006) (noting that "a corporation is charged with constructive knowledge ... of all material facts of which its officer or agent ... acquires knowledge while acting in the course of employment within the scope of his or her authority." (citation omitted) (internal quotation marks omitted)).

In short, the evidence, when construed in the light most favorable to the School District, establishes that the School District was aware of its injury before March 2004. We therefore hold that the statute of limitations bars the School District's non-warranty claims, which were not brought until March 2006.

Affirmed in part, reversed in part, and remanded.